**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA, Relator,**

v.

**The Honorable Rogelio VALDEZ, Judge, Respondent.**

No. D–3310.

Supreme Court of Texas.

Sept. 29, 1993.

Rehearing Overruled Nov. 17, 1993.

John L. Ross, Lisa A. Stegall, for relator.

Rollins M. Koppel, Greg M. Powers, Harlingen, for respondent.

## OPINION

PHILLIPS, Chief Justice.

This original mandamus action arises from a bad faith insurance case. Relator seeks relief from the trial court's order compelling production of its attorney's files from the related, previously resolved workers' compensation case. Although we conclude that a document is not automatically privileged because it reposes in an attorney's file, we hold that a request for an "attorney's files," as opposed to a request for specific documents relevant to the pending lawsuit, is objectionable under the attorney work-product exemption from discovery. Because relator timely

asserted this objection, we conditionally grant the writ of mandamus.

## I

Jimmy Ray Haynes was injured on July 3, 1987, in the course and scope of his employment at Wal–Mart Stores, Inc. Relator National Union Fire Insurance Co., Wal–Mart's workers' compensation carrier, disputed the extent of Haynes' on-the-job injury, and the parties submitted the claim to the Texas Industrial Accident Board. The record does not disclose the terms of the Board award, but Haynes was apparently dissatisfied, as he appealed to district court in Cameron County. While his compensation case was pending, Haynes filed a separate action against National Union and its adjustor, Corporate Services, Inc., for bad faith failure to pay benefits. In addition to a common-law bad faith claim, Haynes alleged negligence and gross negligence, negligent and intentional infliction of emotional distress, and claims under the Texas Workers' Compensation Act, the Texas Industrial Accident Board rules, Texas Insurance Code art. 21.21, and the Texas Deceptive Trade Practices Act.

Haynes ultimately prevailed in the compensation case, obtaining a judgment against National Union for $46,762.[1] On March 20, 1991, with the bad faith case still pending, National Union paid the compensation judgment in full and obtained a judgment release signed by Haynes.

National Union moved for summary judgment in the bad faith case on July 1, 1992, arguing that the judgment release executed by Haynes in the compensation case also released National Union from liability in the bad faith case. National Union alternatively argued that the summary judgment evidence conclusively established a reasonable basis for disputing Haynes' compensation claim.[2]

As to the latter ground, National Union relied in part on the deposition testimony of Scott Schwartzberg, its lawyer in the compensation case. Schwartzberg had been associated with the law firm of Hirsch, Glover, Robinson & Sheiness (hereinafter "the law firm") while representing National Union, but he had left that firm when he was deposed in April 1992. Schwartzberg, who never represented National Union in the bad faith case, testified at his deposition that Haynes' compensation claim had been questionable due to conflicting evidence as to the extent of his compensable injury. Therefore, from the insurer's standpoint, it "deserved to be tried." He also testified, however, that he did not specifically intend for the judgment release, which he drafted, to accomplish anything beyond releasing the compensation judgment.

Shortly before National Union moved for summary judgment, Haynes caused a subpoena duces tecum to be served on the custodian of records for the law firm, requesting all records from the compensation case, "including but not limited to the investigation file, the correspondence file and the pleadings file." It is this discovery request that gives rise to the present mandamus action. National Union objected, asserting the attorney-client, work product, and party communication privileges. On July 2, 1992, after hearing argument of counsel but no evidence,[3] the trial court directed National Union to submit the law firm files for in camera review.

National Union submitted the files to the court on September 25, 1992, along with written objections reasserting its earlier claims of privilege. In addition to general objections as to each particular file, and specific objections as to certain documents, National Union claimed that the files in their entirety were privileged as attorney work product

1. This judgment was based on a jury verdict of total and permanent disability, but at a lower wage rate than Haynes sought.

2. Corporate Services had earlier moved for summary judgment on the same grounds.

3. The record does contain an affidavit by Helen Adams, a supervisor with Corporate Services, which states, inter alia, that "[a]ny communica-

tions between Corporate Service and ... Hirsch, Glover, Robinson & Sheiness and its attorneys were considered to be attorney/client communications and privileged." National Union states that this affidavit was "provided to Respondent on July 2, 1992." The statement of facts from the July 2 hearing, however, contains no reference to this affidavit, and it is unclear whether it was ever considered by the trial court.

because "the organization and labelling of the files, in addition to selection of documents to include in the files, reflect the attorneys' mental impressions, conclusions, opinions, and legal theories formed in preparation for trial."

The trial court held a second hearing on November 24, 1992, after attempting an in camera review. Complaining of their lack of organization, the court ordered all the documents produced. Apparently the court not only rejected National Union's argument that a request for an attorneys' entire file from a particular case violates the work-product exemption, but further concluded that National Union waived its objections by failing to sufficiently index the files.[4]

National Union sought mandamus relief from the court of appeals, but it denied relief on January 7, 1993, without opinion. National Union requested leave to file this action on January 19, 1993, and we stayed production of the law firm files that same day.

## II

We must first determine whether it is proper for a party in an insurance bad faith action to specifically request an opponent's attorney's entire litigation file from a related, previously concluded contract case.

■■■ We start with the proposition, which National Union does not dispute, that a document is not privileged simply because it is contained in an attorney's files. There is no specific privilege under our rules or case-law for "documents in an attorney's files." Thus, a party may not cloak a document with the attorney-client privilege simply by forwarding it to his or her attorney. *See Methodist Home v. Marshall*, 830 S.W.2d 220, 224 (Tex.App.—Dallas 1992, orig. proceeding). Similarly, a file memorandum is not necessarily attorney work product, even though prepared by a lawyer. *See Leede Oil & Gas, Inc. v. McCorkle*, 789 S.W.2d 686, 687 (Tex. App.—Houston [1st Dist.] 1990, orig. proceeding) (holding that attorney memoranda

containing only neutral recitals of fact were not protected by the work-product privilege). In seeking to withhold specific documents from production, a party has the burden of demonstrating the applicability of a particular privilege, notwithstanding the location of these documents in its attorney's files.

■■■ National Union contends, however, that even if some of the documents in the law firm files would not otherwise be privileged, production of an attorney's entire file necessarily reveals the attorney's mental processes, thus invoking work-product protection. We agree.

Texas Rule of Civil Procedure 166b(3)(a) protects from disclosure the "work product of an attorney." This exemption shelters the "mental processes, conclusions, and legal theories of the attorney, providing a privileged area within which the lawyer can analyze and prepare his or her case." *Owens–Corning Fiberglas Corp. v. Caldwell*, 818 S.W.2d 749, 750 (Tex.1991) (citations omitted). The exemption continues even after the litigation for which the work product was prepared concludes. *Id.* at 751–52.

An attorney's litigation file goes to the heart of the privileged work area guaranteed by the work product exemption. The organization of the file, as well as the decision as to what to include in it, necessarily reveals the attorney's thought processes concerning the prosecution or defense of the case. For example, one of the law firm files which National Union produced for in camera inspection was Schwartzberg's "trial notebook," which directly reflects his trial strategy. While a party should not be allowed to shield discoverable documents simply by placing them in an attorney's file, neither should its attorney be restricted in the organization and maintenance of his or her files by the prospect that they might have to be revealed in their entirety in either current or future litigation. As the Supreme Court recognized in *Hickman v. Taylor*, 329 U.S. 495, 511, 67 S.Ct. 385, 393, 91 L.Ed. 451 (1947):

---

4. The trial court had directed National Union at the September 25 hearing to "index" the files submitted for in camera inspection. Because we conclude that National Union asserted a valid work-product objection to Haynes' request for the entire law firm files, we need not today reach the issue of whether, or to what extent, a party must index documents submitted for in camera review, or to what extent a trial court may heighten any such duty on a producing party.

Proper presentation of a client's case demands that (the attorney) assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference.

Based on this doctrine, federal courts have recognized that an attorney's selection and ordering of documents in anticipation of litigation is protected work product, even where the individual documents are not privileged. *See Sporck v. Peil,* 759 F.2d 312, 315 (3d Cir.1985); *James Julian, Inc. v. Raytheon Co.,* 93 F.R.D. 138, 144 (D.Del.1982). The court in *Sporck* held that counsel's selection of specific documents for pre-deposition review by his client fell within the zone of work-product protection. 759 F.2d at 316. This reasoning applies with even greater force where a party seeks to discover an attorney's entire litigation file.

Moreover, no legitimate purpose is served by allowing a party to discover an opponent's litigation file. Our decision today does not prevent a party from requesting specific documents or categories of documents relevant to issues in a pending case, even though some or all of the documents may be contained in an attorney's files. It does, however, prevent a party from requesting the entire file, which is almost certain to encompass numerous irrelevant and immaterial documents, such as transmittal letters and pleadings already on file with the court, as well as privileged information.

We thus conclude that National Union raised a valid work-product objection to producing the law firm files in their entirety in response to the subpoena duces tecum. The trial court abused its discretion in ordering production of these files.

### III

Haynes further argues that National Union waived its privileges by attempting to use them offensively. National Union's motion for summary judgment, filed July 1, 1992, expressly relied on Schwartzberg's opinion, given at his deposition, that National Union's denial of the compensation claim was reasonable. Haynes argues that National Union may not rely on Schwartzberg's testimony in this manner and at the same time shield his files from discovery.

We recognized in *Ginsberg v. Fifth Court of Appeals,* 686 S.W.2d 105 (Tex.1985), that a privilege may be waived by offensive use. "A plaintiff cannot use one hand to seek affirmative relief in court and with the other lower an iron curtain of silence against otherwise pertinent and proper questions which may have a bearing upon his right to maintain his action." *Id.* at 108 (quoting *Pavlinko v. Yale–New Haven Hosp.,* 192 Conn. 138, 470 A.2d 246, 251 (1984)). Although *Ginsberg* concerned the psychotherapist-patient privilege, we have recently applied the offensive waiver principle to the attorney-client privilege, *Republic Ins. Co. v. Davis,* 856 S.W.2d 158, 164 (Tex.1993), as well as indicating that it applies to the work-product privilege. *Owens–Corning Fiberglas Corp. v. Caldwell,* 818 S.W.2d 749, 752 (Tex.1991).

■ In *Davis,* we stated that privileges "represent society's desire to protect certain relationships, and an offensive use waiver of a privilege should not lightly be found." 856 S.W.2d at 163. Accordingly, we held that such waiver requires each of the following elements: 1) the party asserting the privilege must seek affirmative relief; 2) the privileged information must be such that, if believed by the fact finder, would probably be outcome determinative; and 3) disclosure of the confidential information must be the only means by which the aggrieved party may obtain the evidence. *Id.*

■ In this case, National Union does not seek affirmative relief. Rather, it relies on information in the law firm files only to avoid Haynes' claims. National Union's assertion that it had a reasonable basis to deny the compensation claim is not even an affirmative defense, but is merely a rebuttal to the insurance bad-faith cause of action. *See Aranda v. Ins. Co. of North America,* 748 S.W.2d 210, 213 (Tex.1988). Moreover, National Union subsequently amended its July 1, 1992, motion for summary judgment to delete all references to Schwartzberg's testimony, and it has represented to the trial court as well as this Court that it does not intend to rely on

this testimony. Haynes thus may not show waiver by offensive use.

National Union also based its summary judgment motion on the judgment release signed by Haynes in the compensation case. Haynes argues that this constitutes another attempt by National Union to use its privileges offensively, as he believes there may be a memo in the law firm files bearing on National Union's understanding as to the scope of the release.[5] Again, however, Haynes is unable to establish waiver by offensive use, as National Union is not seeking affirmative relief.

## IV

To be entitled to mandamus relief, National Union must also demonstrate that it has no adequate remedy by appeal. *See Walker v. Packer,* 827 S.W.2d 833, 840 (Tex. 1992). We held in *Walker* that an appellate remedy is not adequate "when the trial court erroneously orders the disclosure of privileged information which will materially affect the rights of the aggrieved party...." *Id.* at 843. Based on our review of the law firm files, we believe that their disclosure would materially affect National Union's rights, a conclusion Haynes does not dispute.

Accordingly, the writ of mandamus is conditionally granted. The trial court should vacate its order compelling production of the law firm files. The writ will issue only if the trial court does not comply.

---

5. Schwartzberg testified at his deposition that there could be such a memo in his files.